OPINION OF THE COURT
Carol H. Arber, J.
A bench trial was held before me on July 30 and 31, 1987, on the charge of menacing in violation of Penal Law § 120.15. A number of witnesses testified for the People and for the defendant.
As the testimony at trial proceeded it became clear that this matter arose out of a landlord-tenant dispute between the defendant (who is the tenant) and the complaining witness (who is the managing agent), and that the real subject of the case was apartment 9 at 156 Second Avenue.
*1058 With that in mind, it is easy to summarize the testimony. The complaining witness, Mr. De Bari, testified that on March 10, 1987 he was investigating the repairs of a leak that he had learned of, and was touring the building in the company of the superintendent and one of the plumbers who had been working on the repairs. They had ascertained that the leak complained of originated in apartment 9 and they were on their way to see if the repair was complete. When they arrived at the door, they found the apartment door slightly ajar. When no one responded to their knocks, they entered the apartment and found it empty except for a rolled up piece of carpet and a dresser. Mr. De Bari states that it was against the fire regulations to leave the door unlocked so he asked the workman to change the lock. Mr. De Bari did not see Mr. Vazquez that day, but he did know that Mr. Vazquez was the tenant. He also admitted that he had long suspected that Mr. Vazquez did not reside in the building, but had given the apartment to his sons. (This claim or others similar to it had been the unsuccessful basis for efforts to remove Mr. Vazquez as a tenant in landlord-tenant court.)
On March 18, 1987 Mr. De Bari was again at the building, and he testified that while he was in the vestibule he encountered Mr. Vazquez who was entering the building. Mr. De Bari testified that defendant slammed the door into his shoulder, knocking him to the ground. With the complainant in that position, the defendant then pulled back his jacket exposing a gun in a holster to Mr. De Bari’s view.* In a threatening way the defendant then said to Mr. De Bari: "Next time I’m going to use this; next time you won’t get off so easy.” Mr. De Bari stated that the defendant never removed the gun from the holster, and that after delivering the threat he left the building. Mr. De Bari got up and pursued the defendant out the door yelling to him that he was going to have him arrested.
After the People rested their case, the defendant testified about finding the apartment locked on March 10, 1987. He stated that this did not anger him and that he simply entered his apartment through a fire-escape window and once again changed the locks. When he saw Mr. De Bari on March 18 he claimed that he was not at all angry and he denied that he had made the threats that Mr. De Bari attributed to him. He also denied that he had hit Mr. De Bari with the door leading *1059 into the vestibule, which he moreover claimed would have beep, impossible to do. He stated that when he left the vestibule, Mr. De Bari followed him onto the street yelling at him and threatening to have him arrested.
Of the two versions of the events of March 18, 1987,1 credit the testimony of Mr. De Bari. The question then is whether his testimony constitutes the crime of menacing.
Penal Law § 120.15 provides: "A person is guilty of menacing when, by physical menace, he intentionally places or attempts to place another person in fear of imminent serious physical injury.” In order to prove this charge, the People must prove that the defendant committed a physical act which placed the defendant in fear of imminent serious injury. (People v Stephens, 100 Misc 2d 267, 268 [Dist Ct, Suffolk County 1979].)
The question then becomes whether the act of exposing the handle of the bolstered gun constituted a threat of imminent physical injury. Imminent is defined as "[n]ear at hand * * * on the point of happening;” and imminent peril as "impending * * * not remote, uncertain or contingent”. (Black’s Law Dictionary [5th ed 1979].) Mr. De Bari, by his own testimony, made it clear that the defendant’s threat was that he would use the gun "next time”. Moreover, the defendant never removed the gun from its holster. Under these circumstances the threat is less than imminent, particularly when accompanied by defendant’s act of leaving the building.
In spite of the fact that the threat was not imminent, it was a threat which raises a real issue about whether a person who engages in such behavior should be permitted to carry a gun under license from the State of New York. Nevertheless the People have failed to prove the elements of the crime beyond a reasonable doubt, and on that basis, this court finds him not guilty of menacing.

 No charge of criminal possession of a weapon was brought since defendant had a license for the gun.