■ In the Matter of Carlique P., a Person Alleged to be a Juvenile Delinquent, Appellant. [839 NYS2d 750]—

Order of disposition, Family Court, Bronx County (Alma Cordova, J.), entered on or about August 23, 2005, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that he committed acts which, if committed by an adult, would constitute the crimes of petit larceny and criminal possession of stolen property in the fifth degree, and imposed a conditional discharge for a period of up to 12 months, reversed, on the law, without costs, and the petition dismissed.

On or about February 5, 2005, appellant threw a paper clip at the complainant's friend while they were riding on a bus, and the two exchanged words. Two days later, the complainant and his friend were on a bus when a group of five boys, including appellant, engaged in a verbal altercation with the complainant's friend. One of the boys in the group told the complainant's friend to "get off the bus or else." The friend got off the bus, followed by the complainant and the group of boys. While one of the boys and appellant were speaking to the complainant's friend, another boy unexpectedly hit the complainant's friend on the side of his face with brass knuckles. Those two started to fight, and appellant and the remaining three boys joined them.

The complainant also joined in, but at no point did he and appellant fight each other. During the struggle, the complainant partially removed his jacket to enable him to fight more effectively. The same boy who struck the complainant's friend then struck the complainant with brass knuckles and pulled the complainant's jacket off the rest of the way. The complainant and his jacket both fell to the ground. The complainant's friend pulled him up from the ground, and the two walked to the bus stop and boarded a bus. From the vehicle's window, they each saw appellant pick up the jacket and immediately hand it to another member of the group.

As a result of this incident, the presentment agency initiated a juvenile delinquency proceeding alleging that appellant engaged in acts which, if committed by an adult, would constitute the crimes of attempted robbery in the first degree, robbery in the second degree, robbery in the third degree, grand larceny in the fourth degree, attempted assault in the second degree (two counts), criminal possession of a weapon in the fourth degree (two counts), criminal possession of stolen property in the fifth degree, petit larceny, menacing in the second degree, attempted assault in the third degree, and menacing in the third degree.

After a fact-finding hearing at which only the complainant and his friend testified, the court dismissed all the charges except criminal possession of stolen property in the fifth degree and petit larceny, based on appellant's act of picking up the jacket from the ground and handing it to another.

We reverse.

While a responsible person might suspect that appellant intended to exercise dominion and control over the jacket, suspicion is not a sufficient basis to affirm a fact finding. Appellant's challenge to the legal sufficiency of the evidence requires us to view the evidence in a light most favorable to the presentment agency, giving it the benefit of every favorable inference, to determine whether any rational trier of fact could have found that every element of the charged crime was established beyond a reasonable doubt (see Matter of Ivan F., 233 AD2d 210 [1996]; cf. People v Contes, 60 NY2d 620, 621 [1983]). Having reviewed the evidence, we find that the presentment agency did not sustain its burden of proving each element of the remaining two charges.

The sole evidence adduced at the fact-finding hearing regarding these two charges is that after the altercation ended and after the complainant and his friend left the scene and had boarded a nearby bus, appellant picked up a jacket from the

ground, handing it to another boy. Specifically, the complainant testified, "going toward the back [of the bus] is when I had seen [appellant] pick up the jacket and give it to one of his friends," and his friend testified, "We took the bus, we went inside and we sat in the back. . . . I saw [appellant] pick up the jacket and give it to one of his friends." Without more, this evidence is insufficient to find that the presentment agency established each and every element of petit larceny (*see* Penal Law § 155.25) or criminal possession of stolen property in the fifth degree (Penal Law § 165.40) beyond a reasonable doubt. Notably, the court dismissed the charges of attempted robbery in the first degree, robbery in the second degree, robbery in the third degree, and grand larceny in the fourth degree at the fact-finding hearing's conclusion.

As for the petit larceny charge, the record contains no evidence to support a finding of larcenous intent beyond a reasonable doubt. Throughout the incident, appellant's actions were directed solely at the complainant's friend. No evidence even suggests that appellant's purpose during the confrontation was to steal complainant's jacket. While we agree with the dissent that "[a]ppellant's intent must be determined as of the moment of the taking of the property," it cannot be denied that events before and after the act of taking are relevant to the taker's intent. The record suggests that this incident was a continuation of an incident on the bus two days earlier between the complainant's friend and appellant. Indeed, even after the complainant became involved in the brawl, there was no exchange or interaction between appellant and him. Moreover, there is absolutely no evidence in the record from which to conclude, at the precise moment of the taking, based on appellant's simple act of lifting the jacket from the ground and immediately handing it to another, that he intended to deprive the complainant of his jacket and appropriate it for himself or another (*see* Penal Law § 155.00 [3], [4]).

Similarly, with respect to criminal possession of stolen property in the fifth degree, the record is devoid of any evidence which would establish beyond a reasonable doubt that appellant knowingly possessed stolen property and that he intended to benefit himself or another with the property or impede its recovery by the owner (*see* Penal Law § 165.40). The presentment agency was required to establish beyond a reasonable doubt that appellant knew the jacket "was stolen by someone" (*People v McFarland,* 181 AD2d 1007 [1992], *lv denied* 79 NY2d 1051 [1992], quoting *People v Corsetti,* 10 AD2d 685 [1960]). The presentment agency failed to meet this burden. While con-

ceivably a rational trier of fact could have inferred that during the altercation appellant was aware of the jacket's ownership, it is nonetheless clear that the evidence was insufficient to conclude that in momentarily possessing the jacket in these circumstances, appellant had the requisite mens rea for petit larceny or criminal possession of stolen property. To hold otherwise would be sheer speculation.

In our opinion, the dissent's reference to the alleged level of violence with brass knuckles against the complainant's friend is not only irrelevant, but it was presumably rejected by Family Court when it dismissed all the assault charges against appellant.

As for the dissent's following two statements: (1) "it seems particularly unlikely that, as the majority speculates, the complainant would abandon a leather jacket in the dead of winter," and (2) "[t]he majority's speculation that appellant may not have known . . . whether [the jacket] was abandoned is unrealistic and contrary to the evidence [presented]," we respectfully suggest that the dissent vanquishes a strawman, for we do not state or imply that the jacket was abandoned.

Finally, were we not concluding that court's fact-finding determination was based on legally insufficient evidence, we would conclude that against it was the weight of the evidence. Concur—Andrias, Marlow, Nardelli and McGuire, JJ.

Tom, J.P., dissents in a memorandum as follows: The material facts are not in dispute. The complainant, a high school student, and his friend, Christopher, were riding a New York City bus at about 3:00 P.M. in the company of a group of four girls when appellant and four other youths boarded. Appellant immediately pointed out Christopher, who was then surrounded by the group. Appellant and the group of boys were talking about an incident two days earlier, wherein appellant had shot a paper clip with a rubber band into Christopher's face, causing an argument. Someone in the group then told Christopher, "you get off the next stop or if not, we will drag you out." The complainant and Christopher both testified they were scared and complied with the command. Christopher got off the bus with appellant followed by his four companions. The complainant and the four girls followed. As Christopher was talking to appellant, one of the members of appellant's group ran forward and, with brass knuckles on his right hand, struck Christopher on the side of his face. As Christopher attempted to defend himself, the rest of the group, including appellant, jumped in and began to beat him all over. The complainant ran to assist his friend. The complainant removed his right arm from his leather jacket to

free it for fighting, leaving the jacket partly zipped around his waist. At that moment, the assailant wielding the brass knuckles came behind the complainant, pulled his jacket off and then struck him on the right side of his face with the brass knuckles. The complainant was stunned and fell to the ground. The complainant testified, "That's when the girls came in and they started pulling us. They had pulled Chris and Chris pulled me and we got in the bus." When the complainant went to the back of the bus, he saw appellant pick up his jacket and give it to one of his friends.

Pursuant to the foregoing factual scenario, the majority finds that "appellant's simple act of lifting the jacket from the ground and immediately handing it to another" constitutes "absolutely no evidence" of appellant's intent to deprive the complainant of his property and is therefore insufficient to support Family Court's finding of petit larceny.

Under Penal Law § 155.25, "A person is guilty of petit larceny when he steals property." Furthermore, for a person to be guilty of larceny, he must have the "intent to deprive another of property or to appropriate the same to himself or to a third person" (Penal Law § 155.05 [1]). Intent cannot be determined in a vacuum or based on an isolated, innocuous act taken out of context. It is generally inferred from conduct and the totality of the surrounding circumstances (*People v Steinberg*, 79 NY2d 673, 682 [1992]; *People v Bracey*, 41 NY2d 296, 301 [1977]; *People v Hayes*, 163 AD2d 165, 166 [1990], *affd* 78 NY2d 876 [1991]) and "is an issue of fact that often must be determined only on the basis of the criminal act and the circumstances surrounding its commission" (*People v Hernandez*, 184 AD2d 439, 440 [1992], citing *Bracey* at 301). It is for the trier of fact to determine whether the accused possessed the necessary mental culpability to support conviction for a crime (*see People v Cabey*, 85 NY2d 417, 421-422 [1995]; *People v Gill*, 265 AD2d 201 [1999], *lv denied* 94 NY2d 862 [1999]).

The standard of review on this challenge to the sufficiency of the evidence is the same as that applicable in a criminal proceeding—proof of each element of the crime beyond a reasonable doubt (*see In re Winship*, 397 US 358 [1970]). In deciding whether the evidence is sufficient, an appellate court must determine whether, viewing the evidence most favorably to the presentment agency (*see Matter of David H.*, 69 NY2d 792, 793 [1987]; *Matter of Louis C.*, 6 AD3d 430, 431 [2004]), there is any valid line of reasoning and permissible inferences that could lead a rational trier of fact to the conclusion reached by the court (*see Matter of Moises O.*, 189 AD2d 687 [1993]). If so, the

disposition must be sustained. This Court, however, must not substitute itself for the factfinder, and great deference should be afforded to the factfinder's opportunity to view the witnesses, hear their testimony and observe their demeanor (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

In the instant matter, there is clearly a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by [the trier of fact] on the basis of the evidence" (*id.*), including appellant's conduct and the totality of the surrounding circumstances with respect to the element of intent.

The majority's speculation that appellant may not have known who owned the jacket or whether it was abandoned is unrealistic and contrary to the evidence. Appellant, who instigated the entire incident, had ample opportunity to observe the complainant before, during and after the altercation, and it is highly implausible that he failed to notice that the "leather" the complainant was wearing was pulled off during the melee by one of the attackers.

It can be reasonably inferred that appellant observed the complainant wearing a leather jacket at all times of the encounter until he departed from the beating without his jacket, which was left lying on the ground in front of appellant and his companions. Further, the evidence permits an inference that appellant, who was in close proximity to all the participants, observed the complainant's jacket being pulled off. The complainant testified that Christopher was to his right when Christopher was struck by the first attacker. Christopher testified that he was already backing away from his attackers when he observed the complainant's jacket being pulled off by the attackers, who then struck the complainant, causing him to fall to the ground. As he was backing away, Christopher picked the complainant up. Christopher was asked at the hearing where appellant was when the complainant's jacket was pulled off. He testified that at that moment his attackers were also backing away from him and that appellant was standing with them. This evidence reflects that Christopher and the group of youths, including appellant, were no longer fighting and were focused on the melee between the complainant and his attacker when the complainant's jacket was pulled off. Finally, it seems particularly unlikely that, as the majority speculates, the complainant would abandon a leather jacket in the dead of winter (February 7, 2005). Thus, it can be justifiably inferred that the complainant left the jacket behind only in his haste to depart the scene and avoid further injury. This was not a situa-

tion where the victims were merely threatened and pushed around; rather they were struck with brass knuckles in the face and head area. The complainant, who had a welt on his head, went to the hospital for treatment the same day and had headaches for the next few days. Christopher, whose mouth was hurting, also went to the hospital and missed one day of school.

The majority finds no evidence tending to show that "appellant's purpose during the confrontation was to steal complainant's jacket." However, this is not the legal standard in assessing larcenous intent. Appellant's intent must be determined as of the moment of the taking of the jacket (see People v Brooks, 79 NY2d 1043, 1045 [1992], cert denied 506 US 899 [1992]; People v Figueroa, 219 AD2d 509 [1995], lv denied 87 NY2d 901 [1995]).

Here, it is likely true, as appellant asserts, that none of the participants in the incident intended to steal the complainant's jacket when the incident began. The relevant inquiry, however, is appellant's intent at the moment the property was taken, not at the moment appellant and his friends told Christopher to get off the bus (see People v Smith, 140 AD2d 259, 261 [1988], lv denied 72 NY2d 924 [1988] [intent element proven even when stolen property was immediately returned, as a "jury might reasonably infer from the evidence that, at the moment (appellant) removed the (property) from the (complainant's) handbag, she acted with the requisite larcenous intent"]). Under the relevant legal standard, the factfinder was justified in finding that appellant had the intent to deprive the complainant of his leather jacket when he picked it up and handed it to his friend.

The same analysis can be applied to the charge of criminal possession of stolen property. Under Penal Law § 165.40, a person is guilty of criminal possession of stolen property in the fifth degree "when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." Further, it is essential in a prosecution for criminal possession of stolen property that the prosecution prove that the property "was stolen by someone" (People v McFarland, 181 AD2d 1007 [1992], lv denied 79 NY2d 1051 [1992]).

Here, that appellant knowingly possessed the complainant's jacket can be inferred from the circumstance that, in appellant's presence, the complainant's jacket had been pulled off with force and without his permission. Further, based on the uncontroverted evidence that appellant picked up the jacket and handed it over to his friend, Family Court reasonably inferred that appellant intended to dispose of the jacket under

such circumstances as to render it unlikely that the complainant would recover it. Based on the evidence presented, Family Court reasonably inferred that appellant, who was present throughout the incident, had noticed that one of his friends pulled the jacket off the complainant's person and intended to deprive the complainant of his jacket by picking it up from the ground and handing it to a fellow participant.

Accordingly, the order of disposition should be affirmed.