■ In the Matter of RASHAUN S., a Person Alleged to be a Juvenile Delinquent, Appellant. [851 NYS2d 1]—

Order of disposition, Family Court, New York County (Mary E. Bednar, J.), entered on or about June 26, 2006, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that he committed acts, which, if committed by an adult, would constitute the crimes of unlawful imprisonment in the second degree and menacing in the third degree, and placed him on probation for a period of one year, affirmed, without costs.

The court's finding was based on legally sufficient evidence and was not against the weight of the evidence. There is no basis for disturbing the court's determinations concerning credibility (*see People v Bleakley*, 69 NY2d 490, 495 [1987]). Appellant and another youth grabbed the victim's leg and prevented him from leaving a school bathroom as he tried to crawl toward the door in an effort to escape. Appellant continued to pull on the victim's leg while the other youth touched the victim's pants in the genital area and engaged in other offensive behavior. This conduct constituted restraint (*see* Penal Law § 135.00 [1]; *Matter of Darryl W.*, 24 AD3d 134 [2005]), and also placed the victim in fear of his safety. The evidence does not support appellant's assertion that this behavior was just a childish prank. We also note that the evidence established that appellant was accessorially liable for the acts of his companion (*see* Penal Law § 20.00). Concur—Nardelli, J.P., Gonzalez and Sweeny, JJ. Kavanagh and McGuire, JJ., dissent in separate memoranda, as follows:

Kavanagh, J. (dissenting in part). Because I do not believe that appellant's actions, even viewed in their worst light, measure up to the crime of unlawful imprisonment in the second degree, I must respectfully dissent.

Both appellant and the victim were, at the time of the incident, 11-year-old students attending fifth grade at the same elementary school. According to the victim, at approximately 2:00 P.M. on January 9, 2006, he left his classroom to use the bathroom located 5 to 10 feet down the hall. As he was about to wash his hands, appellant and Jamel S., another fifth grade student attending the same school, entered the bathroom. Jamel stated, "Yeah, [you're] in the bathroom all by [your]self." Believing that something was about to happen, the victim ran inside a nearby stall and closed the door, but was unable to lock it. Jamel opened the door and grabbed the victim by his shirt. As Jamel was pulling him from the stall, the victim slipped on some water and fell to the floor. Jamel then said "let's go duck [the victim's] head in the toilet." The victim at that point was turned over on his stomach and was crawling toward the bathroom door. Jamel grabbed one of the victim's legs and appellant grabbed the other, and both began to pull the victim toward the urinal. At that point, Jamel flipped the victim onto his back, grabbed the victim's penis over his clothes and began making "huffing noises." The victim then hit appellant and Jamel's hands and knocked them off of his legs, pulling himself from their grasp. He then got up and ran out of the bathroom. According to the victim, the entire episode happened within one minute.

Appellant's testimony cast the entire episode in a different light. Appellant acknowledges pushing the victim after he bumped into appellant. Appellant also admits pulling on the victim's leg, but says he did so in order to open the bathroom door to leave the bathroom. However, both the victim and appellant's testimony are consistent to the extent that they state that what happened in the bathroom involved a minimum of physical contact, which took place over a very brief period of time. Neither makes the case that what transpired constituted a substantial interference with the victim's movements because he was not transferred against his will to another place or confined to that location for any meaningful period of time.

Even considering the evidence as to what occurred in the bathroom in a light most favorable to the presentment agency (see Matter of Carlique P., 42 AD3d 367 [2007]; Matter of Marie K., 19 AD3d 149 [2005]), it simply failed to establish a prima facie case of unlawful imprisonment. A person is guilty of unlaw-

ful imprisonment in the second degree when "he restrains another person" (Penal Law § 135.05). To restrain a person is "to restrict a person's movements intentionally and unlawfully in such manner as to interfere *substantially* with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences . . . without consent and with knowledge that the restriction is unlawful. A person is so moved or confined 'without consent' when such is accomplished by . . . physical force, intimidation or deception" (Penal Law § 135.00 [1] [emphasis added]).

The acts of appellant and Jamel, while obnoxious and immature, amount to nothing more than horseplay among fifth graders and do not constitute a substantial interference with the victim's liberty interest. It involved a minimal amount of physical contact which constituted no more than a shove which may have caused the victim to fall, and a pull on the victim's leg while he was on the bathroom floor. These contacts over such a brief period of time simply did not measure up to a substantial interference with the victim's freedom of movement—instead it was a schoolyard-type confrontation which lasted for a very brief moment in time and is not the sort of conduct which this statute was enacted to criminalize (*compare People v Peters*, 1 AD3d 270 [2003], *lv denied* 1 NY3d 632 [2004] [an assailant's actions in binding his victims' mouths, hands and feet with tape, placing a plastic bag over a victim's head, and placing the other victim inside a cardboard box constituted a restraint ]; *compare Matter of Darryl W.*, 24 AD3d 134 [2005] [defendant's physical restraint preventing his victim from leaving a classroom]). While I agree that appellant's behavior cannot be condoned, it does not measure up to contacts of so significant a duration or impact as to constitute an unlawful restraint.*

While I reluctantly agree with the majority that the charge of menacing in the third degree has been established by the credible evidence presented below, I am convinced that this entire episode was nothing more than an obnoxious prank perpetrated by two 11-year-old children in a schoolyard-type setting. A full-scale prosecution for juvenile delinquency in Family Court and all that such action entails strikes me as being totally out of proportion with what actually occurred. I simply cannot believe that the interest of justice would not have been better served by having the entire matter addressed within the school system in an appropriate disciplinary proceeding.

---

* Moreover, had appellant raised the argument, we could have concluded that the unlawful imprisonment charge merged with the menacing conviction (*see People v Peters*, 1 AD3d at 271).

McGuire, J. (dissenting). I agree with Justice Kavanagh that the evidence was legally insufficient to establish the restraint element of the unlawful imprisonment charge and, with one exception, join in his opinion. I note, too, that one can easily conceive of a myriad of situations in which children or teenagers might grab the arm or leg of another child or teenager and pull him or her a short distance for a similarly brief period of time for some playful or obnoxious reason. Provided only that the "victim" did not consent to the "restraint," the majority's view of the restraint element compels the conclusion that the crime of unlawful imprisonment has been committed in these situations. The exception is that I respectfully disagree both with Justice Kavanagh and the majority with respect to the sufficiency of the evidence to support the menacing charge. In my opinion, even assuming a rational trier of fact could conclude that the victim was in fact placed "in fear of . . . imminent . . . physical injury" (Penal Law § 120.15), no rational trier of fact could conclude that appellant had the requisite mens rea—the intent, i.e., the "conscious objective" (Penal Law § 15.05 [1])—of causing the victim to be placed "in fear of . . . imminent . . . physical injury" (Penal Law § 120.15).