Sherrill **HOLLEY**, Plaintiffs,

v.

**COUNTY OF ORANGE, NEW YORK; Carl E. DuBois, Sheriff of Orange County; The Orange County Sheriff's Department; L. Cottone; Jean Corcoran, Kathryn Andrews and Barbara Wilkerson, Defendants.**

**No. 7:06–cv–3984 (WWE).**

United States District Court, S.D. New York.

Jan. 14, 2009.

---

Robert N. Isseks, Robert Nathan Isseks, Middletown, NY, for Plaintiffs.

David Lee Darwin, Goshen, NY, for Defendants.

### *MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT*

WARREN W. EGINTON, Senior District Judge.

This action arises from plaintiff's claims that defendants violated her rights under the First and Fourth Amendments to the United States Constitution. Against defendants Jean Corcoran, Kathryn Andrews, Barbara Wilkerson ("Probation Office defendants") and Laurence Cottone, plaintiff asserts claims of retaliation for having exercised her free speech rights under the First Amendment, false arrest and malicious prosecution under the Fourth Amendment. As to defendants Carl E. DuBois and the Orange County Sheriff's Department, plaintiff alleges that these defendants failed to properly train

and supervise the Probation Office defendants and Cottone and advanced a policy of deliberate indifference toward plaintiff. Finally, as to defendant County of Orange, plaintiff asserts a claim for failure to properly train and supervise the Probation Office defendants and Cottone. Plaintiff now moves for partial summary judgment (Doc. # 10) on her claims against defendant Cottone as well as to amend her complaint to add Victoria Casey as a defendant (Doc. # 24). Defendants have also filed a motion for summary judgment as to all counts of plaintiff's Amended Complaint (Doc. # 14).

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted briefs, a stipulation of facts and supporting exhibits which reflect the following factual background.

At the time of the events of this case, plaintiff was a 69–year old woman. On January 6, 2006, plaintiff's son, Donald Case, appeared before Judge Jeffrey Berry of the Orange County Court for sentencing on charges of violation of probation and driving while intoxicated. Case's probation officer was Zudorah Anderson, and her supervisor was defendant Kathryn Andrews. At the hearing, Judge Berry revoked Case's probation and sentenced him to consecutive 1–3 year prison terms on the charges. Plaintiff was angry and upset at Anderson for Anderson's alleged laughter while leaving the courtroom. Plaintiff further blamed the Department of Probation for her son's probation violation.

Defendant DuBois was the Sheriff of Orange County. Defendant Cottone was a Deputy Sheriff Investigator for Orange County. Defendants Corcoran and Andrews were Probation Officers for the Orange County Department of Probation.

Defendant Wilkerson was an employee of the Orange County Department of Probation. Casey, whom plaintiff seeks to add as a defendant, was Director of the Department of Probation.

Following the sentencing on January 6, 2006, plaintiff left a message with receptionist Denise Hegarty for Andrews asking Andrews to call her back after 2:30 p.m. Hegarty indicated that plaintiff was upset with Anderson and wanted an apology from the Probation Department for Anderson's alleged laughter.

At approximately 2:30 p.m. that day, Holley entered the office of the Department of Probation. At the time, the security desk at the entrance was unmanned. Defendants allege that plaintiff did not go through the magnetometer and that she attempted to avoid detection. Plaintiff proceeded to place a large bouquet of dead flowers consisting of thorns, sticks and/or weeds, tied with a black bow, on the unmanned security desk. Plaintiff also left a note addressed to "Corcoran, Reiter & Anderson Probation Department" that stated "Thinking of you—Your 'HELP' will long be remembered." It was signed "Sherrill Holley." Defendants claim that plaintiff left the building by walking backwards and trying to avoid detection. Plaintiff disputes this allegation. While in the office, plaintiff did not speak with anyone. She was never in the physical presence of Corcoran, Anderson, Andrews or Reiter. Wilkerson had observed plaintiff while she was in the building and believed that plaintiff had acted suspiciously.

After plaintiff left, the deputy posted at the security desk, Wilbur Green, brought the bouquet and note to Corcoran. Corcoran found the bouquet to be "eerie" and "creepy" and to resemble a bouquet of funeral flowers. Upon learning what had occurred in Case's matter, Corcoran

viewed the flower and card to be a threat to her because she had previously supervised Case and plaintiff had complained about her in the past. Corcoran stated that she was fearful for her safety and afraid to leave the building by herself. At approximately 3:10 p.m., Corcoran emailed Casey and Andrews informing them of the flowers and expressing her concerns.

At approximately 3:00 p.m., Andrews called plaintiff who admitted to delivering the flowers and card. In her supporting deposition to the Misdemeanor Complaint, Andrews stated:

> During my telephone conversation I opened an email from Jean Corcoran regarding the delivery of dead flowers to the Port Jervis probation office.
>
> I asked Mrs. Holley if she was the one who brought the dead flowers to the Port Jervis office, she readily replied, "Yes I [brought] the flowers." I asked her why and she said "That was to say I'm done being abused.... I've had enough.... I have had it. They were given notice with those flowers.... I wanted them to know I'm not taking what happened in Court lying down." When I further questioned her about the given notice remark, she said "Don't take that out of context. I was being facetious. Zudorah will know what I mean. My husband deserves more."
>
> She remarked that she was upset that "someone masquerading as a public servant makes a fool out of my family.... I will not stand for it." She said she wants an apology from the Probation Department in writing.

On January 9, plaintiff sent a letter to Anderson in which she reiterated her reasons for sending the bouquet and note. Plaintiff wrote that the bouquet was "special recognition from me for [Corcoran, Reiter and Anderson's] 'job performances' and cookies were out of the question!"

Plaintiff called Anderson's alleged behavior in court emasculating, obnoxious and inappropriate. She referred to the bouquet as "serving notice" and indicated that the "gift spoke for itself." Plaintiff closed by requesting a "sincere apology from Zudorah Anderson and/or the Orange County Probation Department."

Cottone investigated the January 6 incident and interviewed Wilkerson, Corcoran, Casey, Green, Andrews and Anderson. He was not able to reach plaintiff. He concluded that probable cause existed to arrest plaintiff for menacing in the third degree. On January 11, Cottone swore out a Misdemeanor Complaint captioned "The People of the State of New York against Sherrill A. Holley." The complaint contained the following allegations:

> That Sherrill A. Holley on the 6th day of January, 2006, at approximately 2:30 p.m. at 150 Pike Street, in the City of Port Jervis, Count of Orange, State of New York, did commit the offense of menacing in the third degree, a misdemeanor in violation of Sectino 120.15 of the Penal Law of the State of New York, in that (s)he did, at the aforesaid time and place
>
> COUNT ONE: A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent physical injury or physical injury.
>
> Menacing in the third degree is a class B misdemeanor.
>
> The facts upon which this misdemeanor complaint is based are as follows: The defendant, Sherrill A. Holley did deliver in person to the Orange County Department of Probation, a bouquet of dead flowers and thorns. The bouquet of dead flowers were left on the desk at the deputy's post. The defendant was ob-

served doing this in a sneaking manner. Along with the dead flowers was an inscribed card reading: "Your 'HELP' will long be remembered, and was signed as Sherrill Holley. This card was addressed "Corcoran, Reiter & Anderson Probation Dept." Probation Officer Corcoran received the bouquet of dead flowers in an eerie and threatening manner. The defendant then had conversation with Probation Officer Andrews. The defendant stated to Probation Officer Andrews that she was the one who brought the flowers to the probation office. The defendant said "That was to say that I'm done being abused ... I've had enough ... I have had it. They were given notice with those flowers ... I wanted them to know I'm not taking what happened in Court lying down." The defendant Sherrill A. Holley did intentionally attempt to place Probation Officer Corcoran in fear of physical injury, all contrary to the provisions in such case made and provided.

Cottone arrested plaintiff on January 11.

On January 12, Corcoran swore out to a Supporting Deposition in which she stated, in pertinent part:

> The flowers were eerie and I felt threatened for my safety by the implied message in the card and to the reported [manner] in which they were left for me. I feel the message was a warning of impending harm to myself, illustrated by a funeral bouquet, as retribution for my work as a Senior Probation officer several years ago supervising her son, Donald Jamie Case. I learned shortly after the delivery, Mr. Case had been revoked and sent to State Prison several hours earlier in the Orange County Court. The wording of the message has "played in my mind" many times since the incident.

In addition, Wilkerson swore out a Supporting Declaration containing the following allegations:

> At approximately 2:30 p.m. on January 6, 2006, an older lady with salt and pepper hair entered the building and placed a bundle of flowers on the deputy's desk. As she placed the flowers on the desk she suspiciously looked from side to side and all around. I do not think she saw me. She then backed out of the door and left. The deputy was not at his post at the time.

On April 25, 2006, upon motion by Holley's counsel, the charge against Holley was dismissed on the merits by the Town of Deerpark Justice Court.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *Am. Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. *Celotex Corp.,*

477 U.S. at 323, 106 S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Liberty Lobby*, 477 U.S. at 264, 106 S.Ct. 2505.

## I. Plaintiff's Motion for Partial Summary Judgment [1]

Plaintiff moves for partial summary judgment as to the liability of defendant Cottone on her false arrest claim and claim that her arrest violated her First Amendment right to free speech.

### A. False Arrest Claim

■ The Fourth Amendment to the United States Constitution guarantees that an individual shall not be arrested without probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994). Probable cause "to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. A reviewing court must examine "those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir.1996).

The fact that charges are later dismissed does not mean that there was not probable cause to arrest. *Allen v. City of New York*, 2006 U.S. Dist. LEXIS 95802, *50 (S.D.N.Y. Sept. 29, 2006).

■ Menacing in the third degree occurs when a person, "by physical menace, ... intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury." [2] N.Y. Penal Law § 120.15. The crime of menacing requires neither an injury nor an intent to cause injury. Rather, the intent is to frighten the victim with a fear of imminent serious injury. *See* Donnino, William C., *Practice Commentary, McKinney's Consolidated Laws of New York*, Vol. 39, Penal Law § 120.15.

■ It is undisputed that the card and flowers placed Corcoran in a fear of physical danger. However, fear of danger is not the only required element. There must be a reasonable fear of an imminent danger; that is, the perceived danger must be immediate. *See, e.g., Matter of Denzel F.*, 44 A.D.3d 389, 390, 843 N.Y.S.2d 60 (App.Div.2007) (imminent danger element demonstrated by evidence that defendant had his "fist cocked" in front of victim's face); *People v. Carlson*, 183 Misc.2d 630, 637, 705 N.Y.S.2d 830 (N.Y.City Crim.Ct. 1999); *see also Matter of Rashaun S.*, 46 A.D.3d 412, 415, 851 N.Y.S.2d 1 (App.Div. 2007) (McGuire, J., dissenting) (criminal defendant must have specific intent of placing victim in fear of imminent physical danger): *In re Akida L.*, 170 A.D.2d 680,

---

1. Plaintiff's complaint does not distinguish between the allegations against Cottone and the Probation Office defendants. Plaintiff's motion for partial summary judgment, however, appears limited to Cottone. Therefore, the Court will address only those Cottone-directed counts in this section and will address the counts against the Probation Office defendants when it addresses their Motion for Summary Judgment in section II.

2. Both "serious physical injury" and "physical injury" are defined terms in the New York Penal Law. *See* N.Y. Penal Law § 10.00[9], [10]. Therefore, the Court reads the word "imminent" in the menacing statute as modifying both "serious physical injury" and "physical injury."

567 N.Y.S.2d 93 (App.Div.1991) (reversing conviction where victim did not have a "well-founded" fear of imminent physical injury). In *Carlson*, the court found that there was not sufficient evidence to support a menacing in the third degree conviction where the defendant had spit in the victim's face and called him a racial epithet. The court ruled that the act of spitting, though an offensive physical act, did not reasonably place the victim in fear of imminent physical injury. Similarly, in *People v. Peterkin*, the court found that where the victim did not testify that he was in fear of imminent physical injury, a conviction of menacing in the third degree could not be sustained. *People v. Peterkin*, 245 A.D.2d 1050, 1051, 667 N.Y.S.2d 559 (App.Div.1997).

The investigation conducted by Cottone leads to the conclusion that there was not sufficient probable cause to arrest plaintiff as there was no allegation in the complaint that plaintiff had placed Corcoran in fear of *imminent* physical injury. Further, the statements by the other witnesses to the bouquet do not indicate any immediacy to the physical injury that they feared. While Corcoran did state in her supporting deposition that she "felt threatened for my safety" and perceived the card and bouquet as a "warning of impending harm to myself," this does not reach the level of "imminent physical injury" required under section 120.15. *See Carlson*, 183 Misc.2d 630, 705 N.Y.S.2d 830; *People v. Vazquez*, 136 Misc.2d 1057, 1059, 519 N.Y.S.2d 624 (N.Y.City Crim.Ct.1987) (ruling that showing holster of gun and warning victim of "next time" did not constitute menacing in the third degree). Here, while Corcoran may have been placed in fear of physical injury, there was no evidence to support a claim that she was in reasonable fear of imminent physical injury. Plaintiff's departure from the office after leaving the

bouquet combined with her phone call with Andrews belie any imminent threat.

■ Defendants argue that if probable cause did not exist on the menacing charge, it did exist to support a charge of aggravated harassment in the second degree, New York Penal Law § 240.30. Under New York law, a police officer only needs probable cause that a crime was committed to arrest an individual, not probable cause of a specific crime. *See Wallace v. City of Albany*, 283 A.D.2d 872, 873, 725 N.Y.S.2d 728 (App.Div.2001) ("Probable cause ... does not require an awareness of a particular crime, but only that some crime may have been committed."). A person commits aggravated harassment in the second degree:

When with intent to harass, annoy, threaten or alarm another person, ... she either (a) communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm; or (b) causes a communication to be initiated by mechanical or electronic means or otherwise with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm.

Defendants cite *Vives v. City of New York*, 305 F.Supp.2d 289 (S.D.N.Y.2003), *rev'd on other grounds*, 405 F.3d 115 (2d Cir.2005), to support their argument that aggravated harassment in the second degree does not protect "true threats." In *Vives*, this Court ruled that plaintiff's conduct in mailing religious literature to a candidate for public office was protected conduct under the First Amendment. Therefore, a charge of aggravated harassment could not stand. The Court cited previous decisions, including this Court's decision in *Schlagler v. Phillips*, 985

F.Supp. 419, 421 (S.D.N.Y.1997) *rev'd on other grounds,* 166 F.3d 439 (2d Cir.1999), in which courts have discussed their concerns of the constitutionality of section 240.30.

This Court stated in *Vives* that an individual can be prosecuted under section 240.30 for making "true threats." "True threats" include "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black,* 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). Excluding true threats from First Amendment protection recognizes that such threats place an individual in fear of violence and that such fear creates a disruption. To demonstrate that the language constitutes a "true threat," defendants must establish that the language, on its face and in the circumstances in which it is "made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." *United States v. Sovie,* 122 F.3d 122, 125 (2d Cir.1997).

Plaintiff's bouquet and note were criticisms of the Probation Department's role in her son's conviction. Her message was delivered via a "very crude offensive method" that was the result of poor judgement. *Watts v. United States,* 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). Plaintiff's actions, however, do not rise to the level of a true threat. The evidence supports the view that the bouquet and card were not serious expressions of an intent to commit unlawful violence against the recipient. They were neither unequivocal nor unconditional insofar as plaintiff expressed her dismay with the Department of Probation and asked for an apology. These facts are easily distinguishable from cases where Courts found the defen-

dants' statements to be true threats under the law. *See, e.g., Sovie,* 122 F.3d at 125 (concluding history of violence and specific threat constituted true threat); *Mozzochi v. Borden,* 959 F.2d 1174 (2d Cir.1992) (finding speech not protected where plaintiff sent newspaper clipping about resident who had murdered mayor of an Iowa city and plaintiff was known to hold a gun permit and own a firearm); *United States v. Kelner,* 534 F.2d 1020 (2d Cir.1976) (finding true threat where there was unequivocal and unconditional language of a specific and immediate threat); *see also Watts,* 394 U.S. 705, 89 S.Ct. 1399 (1969) (threat not actionable where plaintiff's speech, in which he said he would assassinate the President if he were able, was "political hyperbole"); *State of New York ex rel. Spitzer v. Cain,* 418 F.Supp.2d 457 (S.D.N.Y.2006) (statements such as "I'd like to stick a coat hanger in you" and "Go to hell" shouted at escorts into an abortion clinic are not true threats).

In light of this, summary judgment in favor of plaintiff is appropriate on plaintiff's claim of false arrest under the Fourth Amendment against Cottone.

**B. First Amendment Retaliation Claim**

Plaintiff also moves for summary judgment on her claim that her arrest constituted retaliation for having exercised her free speech rights under the First Amendment. "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right, and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore,* 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). Even when an action would be

legal if undertaken for legitimate reasons, where the motivation to prevent a person from exercising her First Amendment rights is a but-for cause of the response, the individual's rights have been violated. *Crawford–El v. Britton,* 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). To prevail on this claim, plaintiff must demonstrate that (1) she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of her First Amendment right. *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001). There is no need, in a retaliatory prosecution action, to meet the chilling prong of this analysis if the plaintiff can establish that the police lacked probable cause to arrest her. *Bradley v. City of New York,* 2007 WL 232945, *7–8, 2007 U.S. Dist. LEXIS 7811, *21–22 (S.D.N.Y. Jan. 25, 2007); *Genia v. Parker,* 2007 WL 869594, *22–23, 2007 U.S. Dist. LEXIS 19700, *78 (E.D.N.Y. Mar. 20, 2007).

█ Plaintiff's action are protected by the First Amendment. While crude, her speech did not constitute a true threat and is therefore protected under the First Amendment. *See Watts,* 394 U.S. 705, 89 S.Ct. 1399.

█ As to the motivation prong, Cottone clearly believed that plaintiff had made a threat towards Corcoran and that such threat constituted a crime under New York penal law. His specific intent was to punish plaintiff for her actions. Because the Court finds that her actions were not criminal threats, it must conclude that Cottone sought to silence plaintiff because of her exercise of her First Amendment rights.

Finally, the absence of probable cause leads to the conclusion that her speech was punished. *See Bradley,* 2007 WL 232945, 2007 U.S. Dist. LEXIS 7811; *Genia,* 2007 WL 869594, 2007 U.S. Dist. LEXIS 19700. Accordingly, the Court will grant plaintiff's motion for partial summary judgment.

## II. Defendants' Motion for Summary Judgment [3]

### A. Claim for Malicious Prosecution

█ Plaintiff asserts a claim for malicious prosecution against the Probation Office defendants and Cottone upon which defendants move for summary judgment. To sustain a malicious prosecution claim pursuant to 42 U.S.C. § 1983, the deprivation of liberty—i.e., the seizure—must have been made "pursuant to legal process." *Heck v. Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). This is because the "essence of malicious prosecution is the perversion of proper legal procedures." *Broughton v. State,* 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975). An arrest warrant or arraignment can both serve as the requisite process for a malicious prosecution claim. Without either, however, there can be no such claim because there has not been any legal process commenced. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 117 (2d Cir.1995). In this type of case, the tort of false arrest provides plaintiff's remedy. Because there was no legal process under New York law in this case, the Court will grant summary judgment in favor of defendants on plaintiff's malicious prosecution claim.

---

**3.** Defendants move for summary judgment on many of the same issues as plaintiff did. To avoid repetition, the Court will not address those claims again, but will simply deny defendants' motion on those counts.

### B. Qualified Immunity as to Defendant Cottone

██ Defendants seek summary judgment on the question of whether defendant Cottone is entitled to qualified immunity. Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The test for qualified immunity is two-fold and must be considered in sequence. The threshold question is whether, taken in the light most favorable to the plaintiff, the facts demonstrate the police officer's violation of one of the plaintiff's constitutional rights. The next question is whether that constitutional right was clearly established within the specific context the case. In other words, the court must consider whether the constitutional right was clear enough so that a reasonable officer would understand that his actions would violate that right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Thus, a qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir.1998).

The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. Qualified immunity applies if the officer's mistake as to what the law requires is reasonable. *Id.* It does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. *Malley*, 475 U.S. at 341, 106 S.Ct. 1092. Summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree. *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995).

As to plaintiff's claim of false arrest, it is clear that there was a constitutional violation. Because plaintiff could not, as a legal matter, have committed the crime of menacing in the third degree, qualified immunity cannot protect Cottone. This is not a simple case where reasonable officers could disagree.[4] Plaintiff's conduct did not satisfy the elements of the crime for which she was arrested. This was not a reasonable mistake.

### C. Claims Against Defendants Corcoran, Andrews and Wilkerson

██ Defendants also assert the defense of qualified immunity on behalf of the Probation Office defendants. A complainant cannot be liable to a criminal defendant on a claim for false arrest if the complainant is not involved in the arrest beyond providing information. *See Raysor v. Port Authority of New York & New Jersey*, 768 F.2d 34, 38 (2d Cir.N.Y.1985); *Mitchell v. County of Nassau*, 2007 WL 1580068, *10, 2007 U.S. Dist. LEXIS 38711, *35 (E.D.N.Y. May 24, 2007) ("[A] claim of false arrest may lie where a plaintiff can show that defendants instigated his

---

4. Because plaintiff's conduct did not constitute a true threat, there was also no probable cause to support any harassment charge and therefore, there can be no qualified immunity defense. Again, reasonable officers could not disagree as to whether plaintiff's actions constituted a true threat.

arrest, thereby making the police agents in accomplishing their intent to confine the plaintiff."). Plaintiff here must establish that the Probation Office defendants either lied to Cottone regarding what they witnessed or encouraged him to arrest plaintiff. There is no such evidence here. Therefore, plaintiff cannot assert a false arrest claim against those defendants.

Further, there is no evidence that the Probation Office defendants retaliated against plaintiff for her speech. The undisputed evidence demonstrates that they reported to police what they did and how they felt and did not encourage any arrest.

Because plaintiff has asserted no claims against the Probation Office defendants that can withstand summary judgment, they are entitled to assert a defense of qualified immunity. These defendants did not violate any clearly established constitutional right. They did not falsely arrest plaintiff, nor did they retaliate against her in violation of her First Amendment rights. These defendants, as plaintiff alleges in her complaint, simply acted as witnesses in support of a misdemeanor complaint. There is no claim that these defendants lied to Cottone. Therefore, defendants Corcoran, Andrews and Wilkerson are entitled to qualified immunity for their actions. *See Mejia v. City of New York,* 119 F.Supp.2d 232, 272 n. 5 (E.D.N.Y.2000).

## D. *Monell* Claim

Plaintiff claims that defendants DuBois and Orange County Sheriff's Department[5] are liable on a failure-to-train theory as it relates to Cottone's action and that defendant County of Orange is similarly liable

because of the conduct of defendants Corcoran, Andrews and Wilkerson.

 A municipality is liable for a deprivation of a citizen's rights pursuant to 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality may be held liable for inadequate training, supervision or hiring where the failure to train, hire or supervise amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

 In order for DuBois to be found liable in his supervisory capacity, plaintiff must assert facts that demonstrate a constitutional violation on his part. *See Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999). "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002). In order to hold a supervisor liable for a constitutional violation, plaintiff must demonstrate that the supervisor: (1) directly participated in the underlying constitutional violation; (2) failed to remedy the violation upon learning of it; (3) established a custom or policy fostering the violation or allowed such custom or policy to continue after learning of the violation; (4) was grossly negligent in the supervision of the subordinates who committed the violation; or (5) acted with

---

5. As noted below, there can be no claims against the Sheriff's Department itself as it is an arm of a municipality. Therefore, although the Court will refer to that defendant here, it should be noted that if the Court were to find the Sheriff's Department liable, the actual liable party would be the County itself.

deliberate indifference to the rights of plaintiff by failing to act on allegations of the subordinate's misconduct. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

In *Poe,* the Court pointed out that "a plaintiff is almost always able to point to what more an officer or supervisor could have done" in order to prove a supervisor has been negligent. *Poe,* 282 F.3d at 145. "That is not the issue. Under section 1983, the issue is whether the 'more' that [the supervisor] could have done was clearly established by law at the time he acted or failed to act so that it can be said that [the supervisor] had notice that his actions or omissions rose to the level of a constitutional violation." *Id.*

The evidence proffered by plaintiff meets none of the *Colon* factors. There is no evidence in the record of DuBois's or any other member of the Sheriff's Department's involvement with the arrest of plaintiff. Further, plaintiff has not presented any custom or policy in the Sheriff's Department upon which she can make a *Monell* claim. An allegation that unconstitutional conduct can be imputed to the Sheriff's Department is not sufficient to establish a *Monell* claim, as one bad apple does not create liability on a failure-to-train claim. *See Jenkins v. City of New York,* 478 F.3d 76, 95 (2d Cir.2007) ("A training program is not inadequate merely because a few of its graduates deviate from what they were taught."). Therefore, a reasonable jury could not conclude that the Sheriff's Department or DuBois are liable on a failure-to-train theory to plaintiff.

Similarly, as the Court has concluded above, there is no evidence to support an argument that Corcoran, Andrews or Wilkerson committed a constitutional tort against plaintiff. Defendants proffer evidence that Corcoran, Andrews and Wilkerson were trained to respond a certain way to a perceived threat and did in fact do so. Their actions, based on the Orange County Probation Department Policy Manual, do not rise to the level of tortious and there can be no *Monell* liability on such facts. Even if the Policy Manual does not distinguish between generic "threats" and "true threats," the actions taken by the Probation Office defendants is not tortious as they relate to the manual. Accordingly, summary judgment will be granted as plaintiff's *Monell* claims as to defendants DuBois, Orange County Sheriff's Department and Orange County.

### E. Claim Against Orange County Sheriff's Department

Defendants move for summary judgment on plaintiff's claims against the Orange County Sheriff's Department, arguing that as a municipal department, it does not have a separate legal identity to the municipality itself. Because Orange County has been named a defendant in this action, the Court will grant defendants' motion on this issue and dismiss all claims against the Sheriff's Department. *See Bowman v. City of Middletown,* 91 F.Supp.2d 644, 648 n. 1 (S.D.N.Y.2000).

### III. Plaintiff's Motion for Leave to Amend Her Complaint

■ Plaintiff has moved for leave to amend her complaint to add Victoria Casey as a defendant in this action. The Court will deny plaintiff's motion for several reasons.

Federal Rule of Civil Procedure 15(a) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Fed.R.Civ.P. 15(a). As the Supreme Court has held, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v.*

*Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A district court may deny leave for "good reason" such as futility, bad faith, undue delay, or undue prejudice to the opposing party, but "outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200–01 (2d Cir. 2007).

Here, plaintiff seeks to amend her complaint to add another plaintiff whose involvement plaintiff only discovered by the story told in the summary judgment motion papers. Defendants assert, and plaintiff does not disagree, that plaintiff conducted no discovery in this action; she served no interrogatories or requests for production. Therefore, her late "discovery" of Casey does not provide sufficient excuse to permit plaintiff to amend her complaint.

Second, even if plaintiff's allegations, as described in her Memorandum of Law in Support of Motion for Leave to Amend, were true, there is no claim upon which relief can be sought. For the same reasons that the Court has found there can be no liability against defendants Corcoran, Andrews and Wilkerson—that is, providing truthful statements without encouraging any arrest—there can be no liability against Casey. Therefore, the Court will not grant leave for plaintiff to amend her complaint. The actions taken by Casey or the other Probation Office defendants pursuant to the Orange County Probation Department Policy Manual do not create a *Monell* claim.

## IV. Damages

The legal issues of liability in this case are resolved by this ruling. The Court, however, cannot fix damages under section 1983 as a matter of law. Therefore, this matter will be scheduled for a jury trial with regard to damages.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for partial summary judgment against Cottone (Doc. # 10); GRANTS defendants' motion for summary judgment (Doc. # 14) as to the malicious prosecution and *Monell* claims as well as all claims against defendants Corcoran, Andrews and Wilkerson; and DENIES plaintiff's motion for leave to amend her complaint (Doc. # 24).