**Michael CURLEY, Plaintiff–Appellant,**

**v.**

**VILLAGE OF SUFFERN, George Parness, Leo Costa, Frank Finch, Individually, John Gloede, John McGee, Clarke Osborn, Lance Weinstein, Louis Venturini, and John Wilson, individually and as police officers, Defendants–Appellees.**

Docket No. 99–9367.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 2000.

Decided Sept. 10, 2001.

Raymond G. Kruse, Nanuet, NY, (Raymond G. Kruse, P.C., Nanuet, NY, of counsel), for Plaintiff–Appellant.

Joseph A. Maria, White Plains, NY, (Andrew W. Bilinski, Joseph A. Maria, P.C., White Plains, NY, of counsel), for Defendants–Appellees.

Before CARDAMONE, CALABRESI, and KATZMANN, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal arises from a barroom brawl. Familiarity with such disturbance of the public peace usually is a product of exposure to movies and TV, although such scenes are designed to entertain and are far removed from the violence of a real free-for-all. But the incredible confusion in such a melee, which makes it difficult to know who did what to whom, is quite accurately captured in the fictional presentation. Because of the confusion that results from a barroom brawl, when factual issues are raised on appeal we generally defer to the trial court, realizing that jurors who heard the witnesses are in a better position than an appellate court to sort out right from wrong. Thus, ordinarily we would simply affirm the order appealed from, but in this case we think it necessary to write because there is a point of law—independent of the brawling activities—that needs to be made. That point addresses the effect of a jury's verdict— that finds no liability on the part of individual defendant officers—on the liability of the municipality and on other officers who allegedly failed to intervene in due fashion to protect the plaintiff's rights.

Plaintiff Michael Curley was arrested on the night of August 9, 1994 following an altercation earlier that night at Mugg's Pub in Suffern, New York, an establishment in which he is a part owner. He was charged with assault, resisting arrest, obstructing governmental administration, and disorderly conduct. After the felony assault charge against him was dismissed, a jury acquitted him of all the remaining misdemeanor counts.

Curley then brought the instant suit for alleged violations of his civil rights on August 8, 1997 against the Village of Suffern, Suffern Mayor George Parness, Suffern Police Chiefs Leo Costa and Frank Finch, individually, and John Gloede, John McGee, Clarke Osborn, Lance Weinstein, Louis Venturini and John Wilson, individually and as Suffern police officers (collectively, defendants). He claims defendants conspired to deprive him of his rights under the First, Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983. His complaint asserts that he was arrested, without probable cause and through the use of excessive force, in retaliation for his public criticism of defendants Parness and Finch.

After the United States District Court for the Southern District of New York (Brieant, J.) dismissed defendant Leo Costa from the action at a pre-trial conference held June 26, 1998, the parties agreed to proceed before Magistrate Judge George A. Yanthis. The remaining defendants moved for summary judgment, which the district court granted with respect to all of the claims alleged in plaintiff's complaint, except for the Fourth Amendment excessive force claim against police officers Gloede, McGee, Weinstein and Wilson in their individual capacity. A jury trial on this remaining cause of action was held before the magistrate judge and resulted

in a verdict for defendants. No appeal has been taken from that verdict.

Curley's appeal from the district court's grant of summary judgment brings the case before us. He raises his Fourth Amendment false arrest claim (alleging that he was arrested without probable cause) and his First Amendment claim (alleging retaliatory arrest and a chilling of his exercise of his First Amendment rights) as against all defendants, arguing that the complete grant of summary judgment as to both of these causes of action was improper. He further contends that his excessive force claim should be reinstated against the village and officers Venturini and Osborn.

## DISCUSSION

Since plaintiff appeals only from the dismissal of his claims on summary judgment, we review the district court's decision *de novo*. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 127 (2d Cir.1997). Summary judgment is granted only when no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant meets that burden, the non-moving party must come forward with specific facts that demonstrate a genuine issue of fact exists requiring a trial. Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### I Fourth Amendment Claims

#### A. *False Arrest*

Plaintiff's version of the events that occurred on the night of his arrest is that he tried to break up a fight at his bar. The fight started when a patron named Eric Salzman attempted to strike another patron named Mark Gidula with a glass beer mug. According to plaintiff, he attempted to swat the mug away, then grabbed Gidula and dragged him into the kitchen. As he tried to hold Gidula down, a man named Joseph Ramos ran into the kitchen. Plaintiff hit Ramos in the face with his open hand. Salzman told a different story to the police. According to officer McGee's testimony, Salzman reported that plaintiff had punched him in the arm and thrown an ashtray at him.

■ Despite this disagreement, plaintiff does not dispute the following: (1) Salzman approached defendant officer McGee and claimed plaintiff assaulted him; (2) after officer McGee came to Mugg's Pub and asked plaintiff to step outside to talk about the incident, Salzman arrived in the area with blood on his lip; (3) as plaintiff was talking to McGee, Salzman yelled "He hit me. He hit me."; (4) at the sight of Salzman and upon learning that Salzman accused him of assault, plaintiff became "very irate"; (5) in this excited state, plaintiff may have used obscenities; (6) Ramos approached the officers also yelling that plaintiff hit him; (7) plaintiff admitted to defendant officer Gloede that he did strike Ramos during the struggle in the kitchen; and (8) plaintiff gesticulated with his arms at his sides and his hands in front of him upon being told by officer Gloede— who was about an arm's length away—that he was under arrest.

■ These facts establish probable cause for plaintiff's arrest for assault, *see* N.Y. Penal Law § 120.00(1) (McKinney 1998); *id.* § 120.05(2) (McKinney 1998 & Supp.2001), disorderly conduct, *see id.* § 240.20(1) (McKinney 2000), obstructing governmental administration, *see id.* § 195.05 (McKinney 1999), and resisting arrest, *see id.* § 205.30 (McKinney 1999). Probable cause exists when an officer has "knowledge or reasonably trustworthy in-

formation sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000). When information is received from a putative victim or an eyewitness, probable cause exists, *id.,* unless the circumstances raise doubt as to the person's veracity, *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995).

Plaintiff tries to undermine Salzman's and Ramos' credibility by describing them as drunk on the night in question. Yet, while defendant officer Weinstein thought Ramos "appeared to be intoxicated," plaintiff confirmed to the police that he struck Ramos. Consequently, Ramos' intoxication alone cannot cast doubt on his story. With respect to Salzman, although officer McGee knew that he had been drinking in the pub, we are not told to what extent. To defeat summary judgment, plaintiff was required to come forward with more specific facts creating a genuine issue with respect to probable cause.

■ Plaintiff argues in the alternative that the conflicting accounts from him, Salzman and Ramos should have prompted a more thorough investigation. But, we have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee. *See id.* at 113, 119. Moreover, we rejected an argument similar to that made by plaintiff here in *Ricciuti,* where an arresting officer chose to believe the claimed victim's account of a fight based on his visible injuries, notwithstanding the alleged assailant's cries of innocence. We observed that "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti,* 124 F.3d at 128.

■ Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him. *See Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989). Nor does it matter that an investigation might have cast doubt upon the basis for the arrest. *Id.* at 371. Before making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted. *Id.* Since no federal civil rights claim for false arrest can exist where the arresting officer had probable cause, *Singer,* 63 F.3d at 118, the district court properly granted summary judgment to defendants on this cause of action.

### B. *Excessive Force*

■ Plaintiff challenges the dismissal of his excessive force claim only as against the defendants Village of Suffern and officers Venturini and Osborn. He faults the two officers for failing to intervene in his arrest, alleging the village maintained policies or customs, including a failure to train and supervise, which caused the use of excessive force. We note initially that the district court correctly reclassified plaintiff's claim as one brought under the Fourth Amendment, which prohibits unreasonable seizures of persons, as opposed to the Fourteenth Amendment, which guarantees substantive due process. *See Thomas v. Roach,* 165 F.3d 137, 144 (2d Cir.1999).

■ Rather than determine the propriety of the district court's grant of summary judgment, our analysis is now informed by the jury verdict on the excessive force claims against officers McGee, Gloede, Weinstein and Wilson. In that verdict, the jury determined that

no deprivation of plaintiff's Fourth Amendment rights had occurred. As such, the Supreme Court's decision in *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam), is dispositive of this case.

In *Heller*, the jury in a bifurcated trial returned a verdict for the defendant police officer on claims of false arrest and excessive force. *Id.* at 797–98. In light of this verdict, the Supreme Court reasoned that no liability could attach to the City of Los Angeles and members of the Los Angeles Police Commission, who were sued as being legally responsible for the officer under an alleged unconstitutional municipal policy of using escalating force to effect arrests. The Court observed that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *Id.* at 799, 106 S.Ct. 1571 (emphasis removed).

 Following *Heller*, we have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights. *Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir.1999); *Ricciuti*, 124 F.3d at 132; *Dodd v. City of Norwich*, 827 F.2d 1, 8 (2d Cir.1987) (on reargument, vacating prior panel opinion). *Heller* should not, of course, be applied indiscriminately. For example, where alleged injuries are not solely attributable to the actions of named individual defendants, municipal liability may still be found. *See Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir.1999).

No such concerns are raised by this case. The village is implicated in plaintiff's amended complaint only by way of the individual defendants' conduct. Plaintiff alleges that the "policies and/or customs of [the village] were the moving force behind the actions of the individual Defendant police officers, resulting in the injuries to the Plaintiff as described above." Am. Compl. ¶ 66. The complaint further suggests that all of the village police officers involved in plaintiff's arrest were named as defendants, leaving no question with respect to whether another officer violated plaintiff's rights for which the village might be liable. To the extent plaintiff alleges defendants Parness and Finch ratified the actions of the officers, plaintiff is not appealing the dismissal of the excessive force claim against these supervisory officials. *Cf. Gentile v. County of Suffolk*, 926 F.2d 142, 154 (2d Cir.1991) (distinguishing *Heller* on the basis that the jury verdict at issue did not absolve the individual defendant officers, who instead were found to have violated plaintiff's federal and state law rights).

 Further, the verdict form in this case reveals the jury found no deprivation of rights in the first instance, without ever reaching the question of whether qualified immunity insulated defendants' conduct as objectively legally reasonable. This point is significant because case law further suggests *Heller* will not save a defendant municipality from liability where an individual officer is found not liable because of qualified immunity. *See, e.g., Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1317 (10th Cir.1998); *Barber v. City of Salem*, 953 F.2d 232, 237–38 (6th Cir. 1992). The reason is that the municipality enjoys no qualified immunity shield. *Myers*, 151 F.3d at 1317. Hence, the suit may proceed against it when the jury verdict does not answer the question of whether defendant officers actually violated plaintiff's constitutional rights. *Id.* In such circumstance the jury may have

found excessive force by the arresting officers, but also found they were entitled to qualified immunity because they acted reasonably in light of existing law. Since the qualified immunity exception does not apply to the case at hand, under *Heller* no cause of action may be maintained against the village.

 Because the claim against defendants Venturini and Osborn in their official capacity is essentially a claim against the village, *see Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993), it was also properly dismissed for the reasons discussed above. With respect to the claim against these two officers in their individual capacity, we recognize that law enforcement officials have an affirmative duty to intervene to protect against the infringement of constitutional rights from conduct committed by other officers in their presence. *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994).

Nonetheless, where, as here, the arresting officers committed no infringement, the logic of *Heller* would appear to preclude liability against Venturini and Osborn individually. Although we could find no case applying *Heller* to such a set of facts, the Tenth Circuit has written on the subject expressing a view similar to the conclusion we reach. *See Hinton v. City of Elwood,* 997 F.2d 774, 783 (10th Cir. 1993) (observing, without deciding, that the rationale of *Heller* appears relevant to individual capacity claims—including failure to intervene—asserted against a non-actor defendant). Under this approach, the jury verdict rendered in favor of officers McGee, Gloede, Weinstein and Wilson defeats plaintiff's claim of excessive force against officers Venturini and Osborn.

 Even if *Heller* were inapplicable, we would affirm on the ground that plaintiff cannot create a triable issue of fact to defeat defendants' motion for summary judgment by asserting in conclusory fashion that Venturini and Osborn had a duty to intercede but failed to do so. *Cf. Allen v. Coughlin,* 64 F.3d 77, 80 (2d Cir. 1995). Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be. *Anderson,* 17 F.3d at 557. Plaintiff himself testified that he could not recall whether Venturini was in the pub or with the other officers, or whether Osborn was involved in the arrest. Officers Venturini and Osborn testified that they were trying to disperse the crowd gathering outside Mugg's Pub after the fight. Venturini said he saw plaintiff being carried towards the police car by four officers, but did not see him being handcuffed and did not indicate that he knew how plaintiff was placed in the police vehicle-the two events during which plaintiff claims to have sustained injuries. This testimony is insufficient to show Venturini was either aware of or had an opportunity to intercede. *Cf. O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988) (finding no liability where blows were struck too quickly for an officer to intercede, but finding a question of fact where upon seeing the blows, the officer failed to prevent the victim from later being dragged across the floor).

### C. *Conspiracy*

 Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy. *See Singer,* 63 F.3d at 119.

### II First Amendment Claim

 We turn now to appellant's First Amendment retaliation claim. Curley ran unsuccessfully against defendant Parness for the office of mayor of the Village of

Suffern in 1993. During the campaign plaintiff accused Parness, who also serves as village police commissioner, and Finch, who serves as village police chief, of covering up and failing to discipline the actions of a village police officer who allegedly drew his gun in anger on another officer. Plaintiff believes his arrest on the night of August 9, 1994—a number of months after the election—was in retaliation for such criticism.

■ To prevail on this free speech claim, plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right. *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir.1998). No one disputes the existence of the first element.

■ As to the second element, because defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken. *Singer*, 63 F.3d at 120; *Mozzochi v. Borden*, 959 F.2d 1174, 1179–80 (2d Cir.1992). Were such an inquiry to be made, plaintiff has proffered no evidence of defendants' motive beyond the allegation in his amended complaint that defendants acted "out of mean-spiritedness and with a deliberate view towards inflicting physical and emotional injury and economic loss upon the Plaintiff because of his First Amendment protected activities." Am. Compl. ¶ 56. Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim. *Blue v. Koren*, 72 F.3d 1075, 1082–83 (2d Cir.1995).

■ Further, plaintiff must show, with respect to the third element, that his First Amendment rights were "actually chilled."

*Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir.1978). The Supreme Court has held that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). In the case at bar, despite plaintiff's charge that he was arrested in retaliation for his comments made during the 1993 mayoral campaign, he continued his 1994 campaign for village trustee even after the arrest and ran again for village public office in 1995. Although plaintiff insists that his 1995 campaign was affected by his arrest—namely, that it was demoralized and only amounted to a token effort—the fact remains that Curley chose to run for public office even after the events of August 1994. Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech. *See Singer*, 63 F.3d at 120 (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir.1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Since plaintiff's arrest was made on probable cause and had no effect on his exercise of First Amendment rights, summary judgment was properly granted to defendants on this cause of action.

## CONCLUSION

Accordingly, the judgment entered by the district court is affirmed.