**Risa A. ROSS, Plaintiff,**

v.

**Robert LICHTENFELD, Defendant.**

**No. 07 CIV 0014–WGY.**

United States District Court, S.D. New York.

Dec. 6, 2010.

Jonathan Lovett, Lovett & Gould, Kim P. Berg, Gould & Berg LLP, White Plains, NY, for Plaintiff.

Rondiene Erin Novitz, Cruser & Mitchell, LLP, Melville, NY, for Defendant.

Memorandum

WILLIAM G. YOUNG, District Judge.[1]

## I. INTRODUCTION

The plaintiff, Risa Ross ("Ross"), is seeking damages from the defendant, Robert Lichtenfeld ("Lichtenfeld"), superintendent of the Katonah–Lewisboro Union Free School District (the "District"). Ross

1. Of the District of Massachusetts, sitting by designation.

alleges that she was wrongfully terminated in retaliation for exercising her First Amendment rights; that her right to free speech was chilled by Lichtenfeld's unlawful actions; that she was denied her Fourteenth Amendment right to Equal Protection under the law; and that she was fired without the pre-deprivation hearing required by the Due Process Clause of the Fourteenth Amendment.

The court held oral argument on the present motion for summary judgment on October 19, 2010. For the following reasons, Lichtenfeld's motion for summary judgment was denied from the bench on that date as to Ross's First Amendment retaliation claim, but granted on all other counts.

## A. Procedural Posture

Ross filed her first complaint regarding this matter on September 5, 2006. *See* Civil Action 06–06698, ECF No. 1. She subsequently filed another complaint on January 3, 2007. *See* Civil Action 07–00014, ECF No. 1. She amended the latter complaint on March 14, 2007, and the two cases were consolidated before Judge Stephen Robinson. *See* Civil Action 07–00014, ECF No. 16. Ross's initial complaints asserted claims against a number of defendants in addition to Lichtenfeld, including the District's School Board (the "Board"), members of the Board, other District officials, and the District itself. These defendants filed a motion to dismiss, which Judge Robinson granted in part and denied in part. ECF No. 20. Ross then discontinued without prejudice her claims

against all defendants except Lichtenfeld. ECF No. 24. Lichtenfeld filed the present motion for summary judgment on January 12, 2009. ECF No. 26 The case was reassigned to this Court in July 2010, and this Court held oral argument on the present motion on October 19, 2010.

## B. Facts[2]

Ross began working as a payroll clerk-typist for the District in September 2008. Pl.'s Counter–Statement Material Facts Dispute ¶ 1, ECF No. 29. She worked on a provisional basis until September 1999, when she was hired permanently. *Id.* When she applied for the position, Ross submitted a resume and completed two civil service applications. *Id.* ¶ 3, 4. Ross failed to indicate on those applications that she had been previously employed by and terminated from another school district. *Id.* ¶¶ 3–7.

As a payroll clerk-typist, Ross's duties included processing the District payroll, transmitting direct deposits, mailing garnishment checks, transmitting taxes, preparing quarterly tax reports, and confirming that pay rates and total pay were accurate. *Id.* ¶ 8, Her duties were clerical in nature and she had no decision-making authority with respect to whether payments should be made by the District. *Id.* Between May 2003 and April 2006, Ross approached Lichtenfeld, the District superintendent, fifteen to twenty times with concerns about what she believed to be fraudulent and illegal pay requisitions. *Id.* ¶¶ 52–54.

---

**2.** For the purpose of this summary judgment motion, the factual summary presented here consists of undisputed facts and disputed facts in the light most favorable to Ross, the non-moving party. The Court reviews the record as a whole, but "it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v.*

*Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Accordingly, on any issue on which the moving party bears the burden of proof, the Court will disregard evidence in favor of the moving party—even if uncontradicted—that the jury would be free to disbelieve. *See id.*

In November 2005, the District retained Renee Gargano, Deputy Superintendent of the Putnam/Northern Westchester Board of Cooperative Education Services (the "Putnam BOCES") as a consultant in order to address interpersonal problems amongst the staff of the District's business office. *Id.* ¶ 11. Upon reviewing a list of the employees she was to interview, Gargano recognized Ross's name and informed Lichtenfeld that Ross had previously been employed by and terminated from the Putnam BOCES. *Id.* ¶ 13. Gargano further told Lichtenfeld that she had not received a reference request regarding Ross, which concerned Lichtenfeld, *Id.* ¶¶ 13, 15. Lichtenfeld instructed Kevin Sheldon ("Sheldon"), the District's Assistant Business Official, to investigate Ross's employment applications. *Id.* ¶ 18. The investigation indicated that Ross did not list her previous employment with the Putnam BOCES or her termination on her civil service application. *Id.* ¶ 20. The investigation also revealed that Ross had omitted another previous employment and termination from her application. *Id.* ¶¶ 7, 22.

As part of her review of interpersonal issues in the business office, Gargano interviewed Ross in January 2006. *Id.* ¶ 17. During the interview, Ross told Gargano of her concerns about fraud and theft and provided Gargano with documents containing evidence of such malfeasance. *Id.* ¶ 75. Ross stated that she believed the interpersonal issues were the result of employees being uncomfortable about the fraud and theft. *Id.* Ross claims Gargano told her she would discuss the allegations with Lichtenfeld. *Id.*

In May 2006, Ross was suspended with pay and administratively reassigned to her home. *Id.* ¶ 31. At the same time, Lichtenfeld asserts that he mentioned to Peter Breslin, President of the Board, that he was going to recommend the termination of Rose for lying on her employment application. *Id.* Lichtenfeld also states that in June 2006 he asked Gus Montanos ("Montanos"), the District's attorney, to prepare the documentation necessary to recommend Ross's termination, and that the termination was discussed in an executive session of a Board meeting on July 5, 2006. *Id.* ¶¶ 33–37. Ross disputes that either of these conversations or the discussion at the Board meeting took place. *Id.*

On July 21, 2006, while still suspended, Ross sent a letter to the individual members of the Board repeating her allegations of fraud and theft and alleging that Lichtenfeld had covered up the unlawful acts. *Id.* ¶ 38. On August 1, 2006, on Lichtenfeld's recommendation, the Board voted to terminate Ross's employment on the grounds that she had falsified her employment applications. *Id.* ¶ 40. Ross admits that Lichtenfeld had no independent authority to fire District employees and was not a voting member of the Board, but asserts that he had the final say as to whether she would be terminated. *Id.* ¶ 41.

After the August 1 termination, legal counsel informed Lichtenfeld that because Ross was a civil service employee, she should have been afforded a pre-termination hearing. *Id.* ¶ 42. Lichtenfeld informed the Board of this at their next meeting on August 6, 2006; the Board voted to rescind Ross's termination, preferred charges against Ross based on her falsification of her employment applications, and scheduled a hearing on the charges. *Id.* ¶¶ 43–44. Montanos presented a statement of charges to the Board, which it approved and served an Ross on August 8, 2006. *Id.* ¶ 45. As part of the statement of charges, Rose was suspended without pay on August 8, 2006,

pending the determination of the hearing. *Id.* ¶ 47.

On August 24 and 31, 2006, a hearing officer appointed by the Board conducted a hearing on the charges. *Id.* ¶¶ 48–49. The hearing officer issued his decision in December 2006, concluding that Ross had falsified her civil service employment applications and recommending her termination by the District. *Id.* ¶ 49. At a Board meeting on December 19, 2006, the Board—on Lichtenfeld's renewed recommendation—voted to terminate Ross's employment. *Id.* ¶ 50. Lichtenfeld did not participate in the vote. *Id.* ¶ 51.

## II. ANALYSIS

### A. First Amendment Claims

#### 1. Legal Standard

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as matter of law. Fed.R.Civ.P. 56(c)(2). In reviewing the evidence advanced by the parties, this Court must "resolv[e] all ambiguities and draw[ ] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Burg v. Gosselin,* 591 F.3d 95, 97 (2d Cir.2010) (quoting *Wright v. Goord,* 554 F.3d 255, 266 (2d Cir.2009)).

■ To succeed on her First Amendment retaliation claim under 42 U.S.C. section 1983, Ross must show that (1) the speech at issue was protected by the First Amendment; (2) she suffered an adverse employment decision; and (3) "a causal connection exists between [her] protected speech and that adverse employment decision, so that it can be said that [her] speech was a motivating factor in the adverse employment action." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. Of Educ.,* 444 F.3d 158, 162 (2d Cir.2006). Lichtenfeld disputes the first and third elements

of Ross's claim but does not deny that she suffered an adverse employment action.

For her chilling claim, Ross must show that Lichtenfeld's actions "actually chilled" the exercise of her First Amendment rights. *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001) (quoting *Davis v. Village Park II Realty Co.,* 578 F.2d 461, 464 (2d Cir.1978)). "[A]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* (quoting *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)).

#### 2. First Amendment Protected Speech

■ Whether speech addresses a matter of public concern and is protected by the First Amendment is matter of law. *Cioffi,* 444 F.3d at 163. In making this determination, this Court must examine the "content, form, and context of a given statement, as revealed by the whole record...." *Id.* (quoting *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

■ Public employees must accept some limitation on their freedom as citizens as a condition of their employment, but "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). When public employees make statements "pursuant to" their employment, however, their speech is not protected by the First Amendment. *Id.* at 421, 126 S.Ct. 1951, Speech that is "pursuant to" a public employee's job duties need not be required by, or included in, the employee's

job description. *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir.2010).

Here, Ross points to three different instances of speech which, she claims, triggered Lichtenfeld's retaliation against her: her numerous reports to Lichtenfeld about suspected fraud and illegal disbursements of District funds, her statements to Gargano about the same malfeasance, and her letter to the Board. The content, form, and context of each of these instances of speech are addressed below.

■ First, the contents of each of these incidents of speech share a common element that supports their protection by the First Amendment: they all concerned alleged fraud and theft by public servants. Such allegations of corruption in a public entity such as a school district clearly involve a matter of public concern. *See Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 46 (2d Cir.1983). The public has an undeniable interest in the operation of public institutions and the lawful expenditure of public funds.

Lichtenfeld, relying on *Santisi v. South Huntington Union Free Sch. Dist.*, No. 03–3847, 2006 WL 721320 (E.D.N.Y. March 17, 2006), argues that the content of the speech was not of public concern because it did not involve any expenditures beyond the amount that had been duly budgeted by the district. *See* Def.'s Reply Memo. Law 3, ECF No. 33. Lichtenfeld's reliance on *Santisi* is misplaced. In that case, the speech at issue concerned the plaintiff's belief that a school district's purchase of certain computer software was unwise and her recommendation that the district not purchase the software. *See Santisi*, 2006 WL 721320, at *1. The *Santisi* plaintiff did not—unlike Ross—allege that anyone in the school district was acting illegally in deciding to purchase the software. Thus, although the public may have no interest in how a school district properly allocates and lawfully spends its approved budget, the public does have an interest in whether district employees are stealing from the public fisc.

■ The form and context of two of the incidents of Ross's speech further support her claim of First Amendment protection. When Ross detected what she believed to be fraudulent or illegal disbursements, she brought them to the attention of Lichtenfeld, the superintendent of the District, rather than her immediate supervisor. Although Ross's initial statements to Lichtenfeld were made in private, they are not deprived of their First Amendment protection for that reason. *See Cioffi*, 444 F.3d at 165. The content of her speech and the fact that she went outside the ordinary chain of command supports the conclusion that this was no mere employee grievance. *See Garcetti*, 547 U.S. at 420, 126 S.Ct. 1951 ("While the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" (quoting *Connick*, 461 U.S. at 154, 103 S.Ct. 1684)).

Similarly, Ross's letter to the Board cannot be characterized as an employee grievance: She raised her concerns about unlawful payments with the body that was in a position to take action based on the allegations. Moreover, Ross's letter to the Board made no mention of her suspension or any of the allegations regarding her employment applications. In both of these instances, Ross spoke as a citizen, bringing her concerns about and evidence of fraud and theft to people who could act to remedy the unlawful actions.

■ Ross's statements to Gargano present a more difficult question. When Ross spoke to Gargano, the latter was interviewing numerous business office employees in order to address interpersonal is-

sues in the office. Ross told Gargano about her suspicions of fraud and theft because "she believed [the interpersonal problem] was due to these illegal payments and people being uncomfortable about the occurrence of this fraud." Pl.'s Counter-Statement Material Facts Dispute ¶ 75, ECF No. 29. This speech was not of the form nor in the context of the speech of a normal citizen in response to suspected fraud. As the speech occurred in the context of an internal review of employee issues and addressed problems in the workplace, it can more aptly be analogized to an employment grievance than citizen speech on a matter of public concern. *See Weintraub*, 593 F.3d at 203 ("Our conclusion that Weintraub spoke pursuant to his job duties is supported by the fact that his speech ultimately took the form of an employee grievance, for which there is no relevant citizen analogue.").

Accordingly, based on a consideration of the content, form, and context of the three instances of speech at issue in this case, this Court holds that Ross's statements to Lichtenfeld and her letter to the Board are protected speech as they were citizen speech addressing matters of public concern. Ross's statements to Gargano, however, were related to, and pursuant to, her employment with the District and are not protected by the First Amendment.

### 3. Causation

█ Lichtenfeld also attacks the causation element of Ross's First Amendment retaliation claim. He asserts that Ross's statements to him regarding the fraudulent payments stopped in December 2004, nearly a year and a half before she suffered the adverse employment action. Ross, however, states that her communications to Lichtenfeld continued until the beginning of 2006, approximately six months before she was terminated. This Court must accept Ross's version of this disputed material fact for the purposes of this summary judgment motion.

█ "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). There is no bright-line rule for determining the temporal limit to establish a causal relationship. *Id.* In *Goord*, the court concluded that the passage of only six months was sufficient to support an inference of causation. *Id.* Similarly, here, the six month gap between the time Ross asserts she made her last statements to Lichtenfeld and her termination would allow a reasonable jury to infer causation. The shorter period between Ross's letter to the Board and her termination can support the same inference. Summary judgment in favor of Lichtenfeld on this issue was therefore denied.

### 4. Reasonable Foreseeability

Alternatively, Lichtenfeld argues that he cannot be held liable for the alleged First Amendment retaliation because he merely recommended Ross's termination; the Board had the ultimate authority and took the action that caused the termination. In making this argument, Lichtenfeld relies on *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679 (2d Cir.1998). The Court finds this argument unpersuasive.

In *Taylor*, the Second Circuit held that a principal who reported a complaint of physical abuse by the plaintiff could not be held liable for the plaintiff's termination because the school board then independently decided to conduct an investigation, to file disciplinary charges against the plaintiff, and to suspend the plaintiff. *Id.* at 687. The court in *Taylor* concluded that because the principal merely reported the misconduct and played no role in the decision to investigate, file charges, or sus-

pend the plaintiff, the Board's actions were intervening causes that insulated the principal from liability. *Id.*

By contrast, here, Ross alleges that Lichtenfeld took a much more active role in the events leading to her termination: he recommended her termination to the Board at the August 1 meeting, had Montanos prepare charges against her, corrected the Board when he learned that Ross should have been given a hearing, and recommended her termination again in December. Based on this sequence of events, the intervening actions of the Board in voting to terminate Ross were foreseeable consequences of Lichtenfeld's actions, so he can be held liable for the ultimate result. *See id.* at 688 ("[A] defendant may be held liable for 'those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties.'" (quoting *Warner v. Orange County Dep't of Prob.,* 115 F.3d 1068, 1071 (2d Cir.1997))). At the least, the question of whether the Board's actions were reasonably foreseeable as a result of Lichtenfeld's actions depends on disputed material facts which must be resolved by a jury.

For the foregoing reasons, this Court rejected Lichtenfeld's argument that he could not be held liable for the termination of Ross and his motion for summary judgment on the First Amendment retaliation claim was denied.

### 5. Motivation for Ross's Termination

Lichtenfeld alternatively argues that his motion for summary judgment should be granted with respect to the First Amendment retaliation claim because Ross would have been terminated regardless of her speech due to her falsification of her civil service application. In order to defeat this argument, Ross need only show that a genuine issue of material fact exists as to whether her protected speech was a substantial or motivating factor in Lichten-

feld's decision to terminate her employment. *See Board of County Comm'rs v. Umbehr,* 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). Even though Lichtenfeld has advanced a legitimate reason for Ross's termination, Ross must be afforded and opportunity to demonstrate that this reason was merely a pretext for the retaliatory action. *See Hartman v. Moore,* 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (explaining similar rule in discrimination context). Ross's evidence of prima facie retaliation may be considered in deciding the issue of pretext. *Id.*

Ultimately, the issue of whether Lichtenfeld's asserted legitimate reason is merely pretext is one of credibility and fact for a jury to decide. A reasonable jury could conclude from the evidence presented by Ross that Lichtenfeld acted vindictively toward Ross because she spoke to him repeatedly about suspected fraud and theft that he wanted to cover up. Therefore, summary judgment on this issue was denied.

### 6. Actual Chilling

 In order to succeed on her claim that Lichtenfeld's conduct chilled her exercise of her First Amendment rights, Ross must show that her freedom of speech was "actually chilled." *Curley,* 268 F.3d at 73. She has presented no evidence that Lichtenfeld's actions caused her not to express herself in a way that she otherwise would have. The only evidence provided by Ross regarding speech following her termination was the fact that she did not report her allegations of theft to the New York Attorney General's Office. She does not, however, assert that this was in any way caused by Lichtenfeld. Additionally, because Ross is no longer employed by the District, she cannot argue that her speech

has been chilled by her ongoing relationship with Lichtenfeld and the District. Thus, she has failed to establish that she suffered either a "specific present objective harm or a threat of specific future harm." *Id.*

Summary judgment in favor of Lichtenfeld was therefore granted on Ross's First Amendment chilling claim.

## B. Equal Protection Claims

### 1. Gender Discrimination Claim

▮ In her reply to Lichtenfeld's motion for summary judgment, Ross asserts that the evidence shows she was treated differently from two similarly situated male employees. Pl.'s Memo. Opp'n Def.'s Mot. Summ. J. 19, ECF No. 28. Ross's complaint, however, does not advance a gender discrimination claim, and she has not taken any action to amend her complaint to include such a claim. "An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1193, at 23 n. 9 (3d ed. 2004); *see also Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir.2006) (refusing to consider argument raised for first time in opposition to motion for summary judgment) *Syracuse Broad. Corp. v. Newhouse*, 236 F.2d 522, 525 (2d Cir.1956) (holding that district court acted properly in disregarding argument not alleged in complaint but raised for first time in opposition to summary judgment).

▮ Because this case has been pending since 2007 with no previous mention of a gender discrimination claim, no such claim was contained in the complaint, and the parties have not conducted discovery on such a claim, Ross's argument that she was discriminated against on the basis of her gender is improper. The Court therefore entered summary judgment for Lichtenfeld on Ross's generic equal protection claim.

### 2. "Class of One" Equal Protection Claim

Ross's complaint does contain an equal protection claim based on selective prosecution, also known as a "class of one" claim. She alleges that she was treated differently from other District employees who had falsified their employment applications because Lichtenfeld intended to punish her for the exercise of her First Amendment rights.

▮ Such a "class of one" theory of equal protection is not available to Ross as a government employee: "[T]he class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008).

Because the Supreme Court has foreclosed Ross from pursuing an Equal Protection claim under this class of one theory, summary judgment for Lichtenfeld on this claim was granted.

## C. Due Process Claim

### 1. Procedural Due Process

Ross's final claim is that she was denied due process when she was fired on August 1, 2006, without being afforded a pre-deprivation hearing. She does not dispute that the Board subsequently reversed that initial termination and gave her a hearing before ultimately terminating her in December 2006. Lichtenfeld argues that the Board, not he, terminated Ross on August 1, so he cannot be held liable for the due process violation. Alternatively, he argues

that because Ross was not suspended without pay until August 7—after the Board had reversed her initial termination—she suffered no damages as a result of the August 1 firing.

Lichtenfeld's first argument fails because a reasonable jury could find that the Board's action was the reasonably foreseeable result of his recommendation that they terminate Ross. *See Taylor*, 143 F.3d at 688. When Lichtenfeld recommended that the Board terminate Ross on August 1, he did so without presenting to them any formal charges against Ross. Only later did he present the Board with charges based on Ross's falsification of her civil service application. Based on this sequence of events, a reasonable jury could conclude that the Board's termination of Ross without a pre-deprivation hearing was the foreseeable consequence of Lichtenfeld's actions, so summary judgment on this ground was denied.

■ Lichtenfeld's second argument in favor of summary judgment—that Ross did not suffer damages as a result of the Due Process violation—is more persuasive. Although she was nominally terminated on August 1, 2006, Ross has presented no evidence that she suffered any damages between this first, unlawful termination, and her suspension without pay on August 8. With no evidence that Ross suffered any harm as a result of the alleged illegality, summary judgment for Lichtenfeld on Ross's procedural due process claim was granted.

### D. Absolute and Qualified Immunity

In a final effort to avoid liability, Lichtenfeld claims that his actions enjoy either absolute or qualified immunity. Neither of these arguments is persuasive.

#### 1. Absolute Immunity

■ Lichtenfeld argues that he is entitled to absolute immunity for his role in the termination of Ross because he was performing a function analogous to that of a prosecutor. Def.'s Memo. Supp. Def.'s Mot. Summ. J. 20, ECF No. 26–40 [hereinafter "Def.'s Memo."]. He emphasizes the "functional approach" that courts use to assess issues of absolute prosecutorial immunity, *see Buckley v. Fitzsimmons*, 509 U.S. 259, 268–69, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), and analogizes his starting an investigation and recommending Ross's termination to the actions of prosecutors.

Despite surface-level similarities between Lichtenfeld's actions and those normally associated with prosecutors, this argument fails as matter of law. Even though the Supreme Court has extended the doctrine of absolute immunity to cover certain officials in administrative enforcement proceedings, *see Butz v. Economou*, 438 U.S. 478, 479, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Second Circuit has made clear that this extension does not apply to an official acting as the supervisor of public employees. *See Dobosz v. Walsh*, 892 F.2d 1135, 1139–40 (2d Cir.1989). When such a supervisor takes action regarding the employees working under him, his actions are administrative and not entitled to absolute immunity. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210–11 (2d Cir.2003) ("Discretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors.").

Lichtenfeld's argument that he is entitled to absolute immunity fails.

### 2. Qualified Immunity

Alternatively, Lichtenfeld argues that he is entitled to qualified immunity. *See* Def.'s Memo. 22–25. A public official defendant performing a discretionary function is entitled to qualified immunity when "[his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Poe v. Leonard,* 282 F.3d 123, 132 (2d Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (internal quotation mark omitted). Thus, Lichtenfeld would be entitled to qualified immunity if either (1) the constitutional prohibition he violated was not clearly established, or (2) a reasonable person in Lichtenfeld's position would not have believed his conduct to be unconstitutional. Lichtenfeld's conduct satisfies neither of these criteria, so he is not entitled to qualified immunity.

First, the prohibition against the termination of employment in retaliation for the exercise of constitutional rights is clearly established. The Supreme Court announced the prohibition on the firing of public employees in retaliation for their protected speech at least as early as 1968. *See Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Although courts have modified some of the contours of that prohibition in the ensuing decades, the core of the constitutional mandate against retaliatory firing has remained consistent. *See, e.g., Garcetti,* 547 U.S. at 417–20, 126 S.Ct. 1951. Accordingly, Lichtenfeld's conduct, as alleged, violated clearly established constitutional law.

Second, no reasonable person in Lichtenfeld's position could have believed that his actions were constitutional. In considering this issue, this Court assesses Lichtenfeld's actions against the standard of an "officer[ ] of reasonable competence." *Poe,* 282 F.3d at 146 (quoting *Cerrone v.*

*Brown,* 246 F.3d 194, 202 (2d Cir.2001)). This Court must determine whether "[r]easonable supervisors confronted with the circumstances ... could disagree as to the legality of" the action. *Id.*

No reasonable supervisor of public employees would believe that it was proper to terminate Ross for exercising her First Amendment rights. Moreover, given the nature of Ross's statements to Lichtenfeld and the Board, and the fact that they concerned fraud and the theft of public funds, no reasonable supervisor would believe that her speech did not address a matter of public concern. Because a reasonable supervisor would have believed that Ross's statements and subsequent letter were protected by the First Amendment, Lichtenfeld is not entitled to qualified immunity.

### E. Punitive Damages

Finally, Lichtenfeld argues that Ross is not entitled to punitive damages under section 1983 because she has presented no evidence that Lichtenfeld was motivated by evil intent or that he acted with reckless or callous disregard for Ross's rights. Def.'s Memo. 25. This argument, however, hinges entirely on the resolution of disputed factual matters that are properly left to a jury. A reasonable jury could conclude that Lichtenfeld decided to terminate Ross in retaliation for her protected speech concerning fraud and theft, and from such a determination a jury could reasonably conclude that Lichtenfeld was recklessly indifferent to Ross's rights. Summary judgment on this issue was thus denied.

### III. CONCLUSION

For the foregoing reasons, at the motion hearing on October 19, 2010, the Court **DENIED** Lichtenfeld's motion for summary judgment as to Ross's First Amend-

ment retaliation claim but **ALLOWED** it as to all other claims.