11-4349-cv
*Oglesby v. Eikszta, et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 28ᵗʰ day of September, two thousand twelve.

PRESENT:

> PIERRE N. LEVAL,
> JOSÉ A. CABRANES,
> ROBERT A. KATZMANN,
> *Circuit Judges.*

------------------------------------------------

SANDRA J. OGLESBY and DONALD OGLESBY,

> *Plaintiffs-Appellants,*

> v.                                                        No. 11-4349-cv

HOLLY EIKSZTA, individually, LISA WILES, individually, NANCY SHAROFF, individually, VICTORIA LELAND, individually, THERESA SHEELY, individually, ELLENVILLE CENTRAL SCHOOL DISTRICT, NEW YORK, SHERRY SHARPE, individually, and TASHIA BROWN, individually,

> *Defendants-Appellees.*

------------------------------------------------

**FOR PLAINTIFFS-APPELLANTS:**       Michael H. Sussman, Sussman & Watkins, Goshen, NY.

**FOR DEFENDANTS-APPELLEES:**                    HOLLY L. REINHARDT (Richard Liberth, *on the brief*), Tarshis, Catania, Liberth, Mahon & Milligram, PLLC, Newburgh, NY.

Appeal from a September 22, 2011 judgment of the United States District Court for the Northern District of New York (Neal P. McCurn, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 22, 2011 judgment is **AFFIRMED**.

Plaintiffs-appellants Sandra and Donald Oglesby appeal from the September 22, 2011 memorandum decision and order of the District Court granting defendants-appellees' motion for summary judgment. We assume the parties' familiarity with the facts of prior proceedings, which we reference only as necessary to explain our decision to affirm.

## BACKGROUND

In 2002, the Oglesbys—who have one biological son, "ID"—were given pre-adoptive custody of a sibling group of four children. The four children were an eight-year old boy, a six-year old boy, and two four-year old twin girls, "IG" and "NR." After the Oglesby's received reports that the two older boys engaged in inappropriate sexual conduct with IG and NR, the boys were removed from the home.

In 2003, the Oglesbys officially adopted IG and NR, and the twins began kindergarten. During kindergarten, a rug used during reading time reportedly was a "trigger" that caused IG to act in a sexual manner. This situation was remedied when plaintiffs provided a pillow for IG to sit on during reading time. The Oglesbys also told school officials that they installed video cameras in their home to monitor IG's and NR's behavior. No other significant incidents were reported during kindergarten, and IG's conduct during the first grade was within the normal limits for a child her age.

IG's condition, however, began to deteriorate in second grade. In November 2005, IG inserted a trophy and a caulking gun into her vagina while at home. IG was hospitalized for four weeks, and this incident was communicated to the Ellenville School District. After IG's hospitalization, Mrs. Oglesby told the school nurse that she inspected IG's and NR's vaginas for injuries.

After IG returned to school in January 2006, plaintiffs expressed concerns that IG was taking items into the bathroom and using them to masturbate. In response, a procedure was implemented where IG would empty her pockets before going to the bathroom. Moreover, IG was

2

to use the nurse's bathroom, and the nurse kept a log reflecting when and for how long IG was in the bathroom. The log showed, on average, that IG used the bathroom at school once a day and that each visit lasted about three minutes.

During IG's first week back at school, she told Mrs. Oglesby that an object (a spigot) in the nurse's bathroom made her feel unsafe. Plaintiffs repeatedly contacted school officials to discuss the spigot issue as well as IG's alleged compulsive masturbation.

On March 29, 2006, four school employees called the Ellenville School District's attorney regarding concerns about IG and NR based on information relayed by plaintiffs. The attorney recommended that the school employees make a referral to Child Protective Services ("CPS"). Between April 18 and April 24, 2006, plaintiffs made three complaints to various defendants regarding the safety and treatment of IG and other students at school.

On April 24, 2006, a report was made by telephone to CPS regarding plaintiffs. The call narrative, compiled by a CPS employee, stated as follows:

> There is concern for the emotional welfare of both I[G] and N[R]. The adoptive parents are preoccupied with discussing sexual issues of the two children with anyone who will listen. They discuss how the children were horribly sexually abused while in their biological parent's care in Texas and in foster care. The Oglesby's [*sic*] had adopted four children from the biological family, but have systemically rid themselves of two children and are now working on the last two, that being I[G] and N[R]. The Oglesby's [*sic*] discuss how the girls masturbate too much, how they masturbate and the inappropriate style and settings of one versus the other. They discuss the items the girls masturbate on including water spigots and sinks. They have examined the girls themselves and claim that one of the twin's vaginas is very red inside. The parents claim that the girls are sitting on special rugs and pillows and excessively masturbating. They have requested that the [school nurse] supervise the sexual acting out of the children closer. It is believed that the parents might have installed special cameras to monitor the girls [*sic*] behaviors. It is unknown if the parents are doing this for sexual gratification, but Munchausens cannot be ruled out.

Joint App'x at 25-26.

CPS employees investigated the complaint and deemed the concerns unfounded. Plaintiffs did not experience a loss of custody because of the CPS call.

On January 12, 2007, plaintiffs filed this action. The complaint, based on the First Amendment, alleges that defendants called CPS in illegal retaliation against plaintiffs for having complained about the treatment of IG and other students to the school. The District Court granted

defendants' summary judgment motion and dismissed plaintiffs' amended complaint on September 22, 2011. This appeal followed.

## DISCUSSION

### A. First Amendment Retaliation Claim

To state a First Amendment retaliation claim, plaintiffs must establish that: "(1) [they] ha[ve] an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [their] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [their] First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Under New York Social Services Law, teachers and school administrators have multiple responsibilities, including protecting abused and neglected students. *See* N.Y. SOC. SERV. LAW § 413(a) (making teachers and school administrators legally obligated to report suspected child abuse and neglect). As "mandatory reporters," school officials receive immunity from liability whenever they report suspected abuse in good faith, but they are exposed to liability if they willfully fail to do so. *See id.* §§ 419-420. We have recognized the difficult decisions that mandatory reporters face in the child abuse context. *See, e.g.*, *Kia P. v. McIntyre*, 235 F.3d 749, 758-59 (2d Cir. 2000) ("[Mandatory reporters are obliged to choose] between difficult alternatives . . . . If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in [not doing so], they risk injury to the child . . . ." (quoting *van Emrik v. Chemung Cnty. Dep't of Soc. Servs.*, 911 F.2d 863, 866 (2d Cir. 1990))).

On appeal, the parties dispute whether the CPS call was in retaliation for plaintiffs' criticisms. Plaintiffs argue that the retaliatory nature of the CPS call is shown by the fact that it occurred soon after they complained, and by the fact that the report was, according to plaintiffs' allegations, "materially false." Defendants respond that the propriety of the call is shown by the fact that it was based on a reasonable suspicion of child abuse, and that any retaliatory motive is rebutted because they sought and received advice of counsel to make the CPS call prior to plaintiffs' complaints.

After closely reviewing the record in this case, we conclude that the CPS call was not retaliatory. Plaintiffs' actions—including installing video cameras, inspecting IG's and NR's vaginas, and constantly calling and meeting with school officials about IG's masturbating, even though the observations by teachers and school officials failed to support such a concern—gave defendants a sufficient basis to suspect potential abuse. We owe defendants' decision to report reasonably suspected abuse and neglect "unusual deference" given their legal obligation to report suspected abuse and their potential liability for failing to do so. *See Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 274-75 (2d Cir. 2011) ("If [the] reports [of suspected abuse by mandatory reporters] . . .

4

could result in § 1983 liability, administrators would be exposed to civil liability no matter what they did."); *see also Kia P.*, 235 F.3d at 758-59.

### B. Fourteenth Amendment Right to Intimate Association Claim

To state a claim for a violation of the substantive due process right of intimate association, plaintiffs must demonstrate that the state action depriving them of custody was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Cox*, 654 F.3d at 275 (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999)).

Here, however, plaintiffs admit that they never lost custody of any of their children, including IG. Joint App'x at 151. Thus, the District Court was correct to grant summary judgment dismissing the claim. *See, e.g.*, *Cox*, 654 F.3d at 276 ("Where there is no actual loss of custody, no substantive due process claim can lie."); *Anthony v. City of New York*, 339 F.3d 129, 142-43 (2d Cir. 2003) (considering whether conduct was so "shocking, arbitrary, and egregious" only because a "temporary separation" had occurred) (internal quotation marks omitted).

### CONCLUSION

We have considered all of the Oglesbys' remaining arguments on appeal and find them to be without merit. For the reasons stated above, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5